1  GEORGE S. CARDONA
   Acting United States Attorney
2  CHRISTINE C. EWELL
   Assistant United States Attorney
3  Chief, Criminal Division
   KEVIN M. LALLY (Cal. State Bar No. 226402)
4  BRIAN R. MICHAEL (Cal. State Bar No. 240560)
   NILI T. MOGHADDAM (Cal. State Bar No. 226636)
5  Assistant United States Attorneys
   Violent and Organized Crime Section
6       1500 United States Courthouse
        312 North Spring Street
7       Los Angeles, California 90012
        Telephone:  (213) 894-6148/0340/6520
8       Facsimile:  (213) 894-3713
        E-mail: kevin.lally@usdoj.gov
9               brian.michael@usdojg.gov
                nili.moghaddam@usdoj.gov
10
   Attorneys for Plaintiff
11 United States of America

12             UNITED STATES DISTRICT COURT

13         FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,        ) No. CR 07-1172(B)-DDP
                                    )
15            Plaintiff,            ) GOVERNMENT'S OPPOSITION TO
                                    ) DEFENDANT ALEXANDER RIVERA'S
16            v.                    ) MOTION TO DISMISS; MEMORANDUM
                                    ) OF POINTS AND AUTHORITIES
17                                  )
   SERGIO PANTOJA, et al.,          ) Hearing Date: February 22, 2010
18                                  ) Hearing Time: 3 p.m.
              Defendants.           )
19                                  )
                                    )
20                                  )
                                    )
21                                  )
                                    )

22

23      Plaintiff, United States of America, by and through its

24 counsel of record, Assistant United States Attorneys Kevin M.

25 Lally, Brian R. Michael, and Nili T. Moghaddam, hereby files its

26 opposition to defendant Alexander Rivera's motion for an order

27 dismissing all charges on speedy trial grounds or, in the

28 alternative, for an order to show cause requiring the government

1   to present proof at an evidentiary hearing that defendant Rivera

2   is "absent" or "unavailable" under Title 18, United States Code,

3   Section 3161(h)(3) (CR 620).

4        This opposition is based upon the attached memorandum of

5   points and authorities, the files and records in this case, and

6   such further evidence and argument as the Court may permit at the

7   hearing.

8   Dated: February 8, 2010          GEORGE S. CARDONA
                                      Acting United States Attorney
9
                                      CHRISTINE C. EWELL
10                                    Assistant U.S. Attorney
                                      Chief, Criminal Division
11

12

                                     _____
13                                    KEVIN M. LALLY
                                      BRIAN R. MICHAEL
14                                    NILI T. MOGHADDAM
                                      Assistant United States Attorneys
15
                                      Attorneys for Plaintiff
16                                    UNITED STATES OF AMERICA

17

18

19

20

21

22

23

24

25

26

27

28

                                      2

**TABLE OF CONTENTS**

PAGE(S)

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . .   1

II.   FACTS . . . . . . . . . . . . . . . . . . . . . .   2

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . .  10

      A.   DEFENDANT'S SPEEDY TRIAL RIGHTS HAVE
           NOT BEEN VIOLATED . . . . . . . . . . . . .  10

      B.   IF THE COURT DETERMINES TO DISMISS THIS
           ACTION AGAINST RIVERA, IT SHOULD DO SO
           WITHOUT PREJUDICE . . . . . . . . . . . . .  16

           1.   Seriousness of the Offense . . . . . . .  17

           2.   The Facts and Circumstances of the Case
                Which Led to the Dismissal . . . . . . .  18

           3.   The Impact of a Reprosecution on the
                Administration of the Speedy Trial Act and
                on the Administration of Justice  . . . . . .  20

III.  CONCLUSION . . . . . . . . . . . . . . . . . . .  22

i

1                      **TABLE OF AUTHORITIES**

2                                                              **PAGE(S)**

3  **FEDERAL CASES**

4  United States v. Blanco,

5       861 F.2d 773 (2d Cir. 1988) . . . . . . . . . . . 19

6  United States v. Butz,

7       982 F.2d 1378 (9th Cir. 1993) . . . . . . . . . 11, 13,15

8  United States v. Calabrese,

9       825 F.2d 1342 (9th Cir. 1987) . . . . . . . . . . 13

10 United States v. Daychild,

11      357 F.3d 1082 (9th Cir. 2004) . . . . . . . . . 10, 13,21

12 United States v. Edwards,

13      627 F.2d 460 (D.C. Cir. 1980) . . . . . . . . . . 14

14 United States v. Fogarty,

15      692 F.2d 542 (8th Cir. 1982) . . . . . . . . . . 16

16 United States v. Medina,

17      524 F.3d 974 (9th Cir. 2008) . . . . . . . . . 12, 21

18 United States v. Sandoval,

19      990 F.2d 481 (9th Cir. 1993) . . . . . . . . . 19, 20

20 United States v. Sperow,

21      494 F.3d 1223 (9th Cir. 2007) . . . . . . . . . . 20

22 United States v. Van Brandy,

23      762 F.2d 548 (9th Cir. 1984) . . . . . . . . . . 14

24 United States v. Yida,

25      498 F.3d 945 (9th Cir. 2007) . . . . . . . . . . 20

26 **FEDERAL STATUTES**

27 18 U.S.C. § 3161 . . . . . . . . . . . . . . . . passim

28 18 U.S.C. § 3162 . . . . . . . . . . . . . . . . passim

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2                                        I.

3                                  INTRODUCTION

4         Defendant Alexander Rivera ("defendant") has moved to

5    dismiss this case with prejudice on speedy trial grounds.

6    Defendant claims that his statutory right to a speedy trial was

7    violated because the government failed to bring him to trial

8    within the time limit required by the Speedy Trial Act.  (Def.

9    Br. at 8.)  In the alternative, defendant seeks an evidentiary

10   hearing at which the government would be required to "meet its

11   statutory burden of establishing" that defendant, who is

12   currently a fugitive, is in fact "absent or unavailable within

13   the meaning of the speedy trial statute."  Id.

14        Under the Speedy Trial Act, the time limit within which a

15   defendant must be brought to trial is triggered by the filing of

16   the indictment or the defendant's arraignment on the charges,

17   whichever occurs last.  Defendant has not been arraigned on the

18   Second Superseding Indictment, the operative indictment in this

19   case, and as a result, the time limit set by the Speedy Trial Act

20   has yet to be triggered.  Thus, defendant's statutory right to a

21   speedy trial could not have been violated because the speedy

22   trial clock has yet to begin running as to him.  Even if the

23   speedy trial clock had begun to run as to defendant, the Court's

24   April 16, 2009 and January 14, 2010 orders continuing the trial

25   date and finding exclusions of time under the Speedy Trial Act,

26   are valid as to defendant.  Defendant's motion to dismiss on

27   speedy trial grounds therefore lacks merit, and should be denied.

28

                                     1

II.

FACTS

The Indictments and the Charges Alleged Against Defendant

The government filed the initial Indictment (the "Indictment") in this case on October 18, 2007.  See Declaration of Brian R. Michael (the "Michael Decl.") at ¶ 2.  The Indictment charged defendant and seventeen other defendants with conspiracy to distribute and distribution of narcotics in violation of Title 21, United States Code, Sections 841 and 846.  Id.  On October 24, 2007, defendant made his initial appearance on the Indictment, and was thereafter arraigned on November 1, 2007. Id.

Upon his arrest, defendant provided a statement to the FBI, after being advised of and waiving his Miranda rights.  Id. at ¶ 3.  In that statement, defendant admitted that he sold narcotics and collected "rent" from other narcotics dealers on behalf of the CLCS Organization.  Id.  Specifically, defendant admitted that he paid the CLCS Organization $75 per day for the right to sell crack cocaine in CLCS Organization territory.  Id. Defendant further admitted that he purchased the crack cocaine he sold from a wholesale dealer specifically authorized by the CLCS Organization and purchased 100 pieces of crack cocaine at a cost of $100 three times per week from that wholesaler.  Id.  In addition, defendant admitted that he collected "rent" for CLCS Organization shot caller and co-defendant Sergio Pantoja for approximately one and a half years between 2002 and 2003.  Id. Defendant admitted that during that time period, he collected between $800 and $1200 daily from various narcotics dealers.  Id.

1    The government filed a First Superseding Indictment in this
2    case on November 15, 2007. Id. at ¶ 4. The First Superseding
3    Indictment added a nineteenth defendant to the case, but did not
4    otherwise differ from the Indictment. Id. Defendant was
5    arraigned on the First Superseding Indictment on December 17,
6    2007. Id.

7         On May 28, 2009, the government filed a Second Superseding
8    Indictment, which was unsealed on June 16, 2009. Id. at ¶ 5.
9    The Second Superseding Indictment charged thirty-nine defendants,
10   including defendant Rivera, with various offenses including
11   racketeering conspiracy, violent crimes in aid of racketeering
12   (including murder, attempted murder, and kidnaping), narcotics
13   offenses, money laundering, and kidnaping. Id. at ¶ 6. As to
14   defendant, the Second Superseding Indictment added two new
15   charges, namely, Racketeer Influenced and Corrupt Organization
16   Act ("RICO") conspiracy and conspiracy to commit money
17   laundering. Id. at ¶ 7. To date, defendant has not been
18   arraigned on the Second Superseding Indictment. Id. at ¶ 8.

19        Specifically, Count One of the Second Superseding Indictment
20   charges defendant with RICO conspiracy in connection with
21   defendant's role as a narcotics dealer, "rent" collector, and
22   street enforcer for the association-in-fact criminal enterprise
23   known as the 18th Street Gang (hereafter, "the CLCS
24   Organization"). Id. at ¶ 9. Defendant is named in Overt Acts 9,
25   25, 69, 83, 105, and 106 of Count One. Id. at ¶ 10. Overt Act 9
26   alleges that on "February 16, 2005, at his home in CLCS
27   Organization territory, defendant RIVERA possessed approximately
28   3.56 grams of crack cocaine, approximately $2,409 in United

3

1   States currency, a loaded Walther PPK .380 semi-automatic
2   handgun, and multiple rounds of .380 caliber ammunition." _Id._ at
3   ¶ 11.  Overt Act 25 alleges that on "April 11, 2006, defendant
4   PANTOJA met with defendant RIVERA and others inside defendant
5   PANTOJA's tattoo shop, and, using coded language, discussed how
6   he was a member of the CLCS Organization and further discussed
7   the distribution of narcotics within CLCS Organization
8   territory." _Id._ at ¶ 12.  Overt Act 69 alleges that on "November
9   13, 2006, using coded language, defendant RIVERA warned defendant
10  TERCERO about the presence of police in CLCS Organization
11  territory." _Id._ at ¶ 13.  Overt Act 83 alleges that on "December
12  3, 2006, using coded language, defendant PANTOJA told defendant
13  RIVERA that PANTOJA had Rivas assaulted for selling crack cocaine
14  in J. Velasquez' area without 'authorization' and that RIVERA
15  should look out to see if Rivas was still dealing in CLCS
16  Organization territory." _Id._ at ¶ 14.  Overt Act 105 alleges
17  that on "December 17, 2006, using coded language, defendants
18  TERCERO and RIVERA discussed the collection of rent from street
19  dealers." _Id._ at ¶ 15.  Overt Act 106 alleges that on "December
20  18, 2006, using coded language, defendant RIVERA told defendant
21  PANTOJA that he would deliver all of the rent he owed, as well as
22  the rent owed by another street dealer." _Id._ at ¶ 16.
23        Count Two of the Second Superseding Indictment charges
24  defendant with narcotics conspiracy. _Id._ at ¶ 17.  Defendant is
25  charged in Overt Acts 11, 21, 55, and 87 of Count Two. _Id._ at ¶
26  18.  Overt Act 11 alleges that on "October 19, 2006, using coded
27  language, defendant RIVERA told defendant TERCERO that he warned
28  a street dealer that defendant PANTOJA would 'go after' the

1    dealer if a problem was not resolved." <u>Id.</u> at ¶ 19.  Overt Act

2    21 alleges that on "November 16, 2006, using coded language,

3    defendant TERCERO asked defendant RIVERA if he had any crack

4    cocaine for a customer because Miranda was unavailable." <u>Id.</u> at

5    ¶ 21.  Overt Act 55 alleges that on "December 10, 2006, using

6    coded language, defendant TERCERO directed defendant RIVERA to

7    pick up 'two fives' (referring to quantities of two styles of

8    crack cocaine) from defendant VILLEDA the next day." <u>Id.</u> at ¶

9    21.  Overt Act 87 alleges that on "January 2, 2007, using coded

10    language, defendant TERCERO directed defendant RIVERA to deliver

11    rent collections." <u>Id.</u> at ¶ 22.

12       Finally, Count Ten of the Second Superseding Indictment

13    charges defendant with conspiracy to commit money laundering.

14    <u>Id.</u> at ¶ 23.

15    <u>Defendant's Release from MDC-LA and Subsequent Deportation</u>

16       At the time defendant made his initial appearance on the

17    Indictment, he was already in federal custody at the Metropolitan

18    Detention Center in Los Angeles ("MDC-LA"), having pled guilty to

19    a violation of Title 18, United States Code, Section 1326(a),

20    (b)(2), Illegal Alien Found in the U.S. Following Deportation, in

21    <u>United States v. Alexander Emilson Rivera-Caseres</u>, No. CR 07-265-

22    ABC (the "1326 Case").  <u>Id.</u> at ¶ 24. Defendant had been sentenced

23    in the 1326 Case on September 27, 2007 to 24 months prison and

24    three years supervised release, after which he remained at MDC-LA

25    awaiting designation to another federal facility.  <u>Id.</u> at ¶ 25.

26    According to the United States Marshals Service (the "USMS"),

27    after the filing of the Indictment in <u>United States v. Pantoja,</u>

28    <u>et al.</u>, No. CR 07-1172-DDP (the "Pantoja Case"), the USMS placed

a hold on Rivera's transfer to another federal facility so that he could make his initial appearance in the Pantoja Case. Id. at ¶ 26. As a result, Rivera remained at MDC-LA even though he had already been sentenced in the 1326 Case. Id.

On or about February 10, 2009, upon the completion of defendant's prison term on the 1326 Case, the Bureau of Prisons (the "BOP") - apparently unaware that defendant had another case pending against him in this district - released defendant from MDC-LA on February 10, 2009 to Los Angeles County to appear on an outstanding warrant in a narcotics case. Id. at ¶ 27. Shortly thereafter, on or about March 3, 2009, defendant was transferred to the custody of the Department of Homeland Security Immigrations and Customs Enforcement ("ICE") and on or about March 11, 2009, defendant was deported to his native country, El Salvador. Id. at ¶ 28. Neither the U.S. Attorney's Office (the "USAO") nor the Federal Bureau of Investigations (the "FBI"), the federal agency in charge of the Pantoja Case investigation, were involved in the process by which defendant was released. Id. at ¶ 29. Nor were these agencies aware that the BOP had released defendant until April 2009. Id. On April 6, 2009, defense counsel informed the USAO that he had learned his client was no longer housed at MDC-LA earlier that day when his investigator tried to visit his client to obtain his consent to agree to a stipulation to continue the trial date that was being circulated among the parties. Id. at ¶ 30; see also email from Gregory Nicolaysen to Brian Michael, dated April 6, 2009, attached to the Michael Decl. as Exhibit 1. At that time, the USAO looked into the matter and on April 8, 2009, the USAO learned that the BOP

6

1   had released defendant.  Id. at ¶ 31.

2        Although defense counsel had previously informed the USAO

3   that he intended to recommend to his client to agree to the April

4   8, 2009 stipulation to continue the trial date, he did not agree

5   to the April 8 stipulation after he learned his client had been

6   deported.  Id. at ¶ 32; Exhibit 1.  Instead, defense counsel

7   offered to have defendant return to the United States, but only

8   if the government would first agree to resolve the case against

9   defendant pursuant to a written plea agreement in which the

10  parties would agree to recommend a sentence of time-served.  Id.

11  at ¶ 33.  Specifically, defense counsel wrote in an April 21,

12  2009 email to government counsel: "The parties agree to a time-

13  served sentence and a written plea agreement is drafted in

14  advance of the client's arrival in L.A. Gov gives client 'safe

15  passage' to re-enter the U.S. for purposes of entering the guilty

16  plea and to be voluntarily deported immediately following the

17  plea.  We schedule a change of plea date with court to coincide

18  with the date of his arrival in L.A.  Client flies to L.A.  My

19  investigator and I pick him up and bring him to court; he signs

20  plea agreement and enters guilty plea.  We waive PSR and he gets

21  sentenced the same day to time served.  The agent escorts Rivera

22  to the airport for the flight back...."  Id. at ¶ 34; see also

23  email dated April 6, 2009 from Gregory Nicolaysen to Brian

24  Michael, attached to the Michael Decl. as Exhibit 2.  Defense

25  counsel added: "I am hopeful that Rivera's family could arrange

26  for him to absorb the cost of round-trip airfare."  Id. at ¶ 35;

27  Exhibit 2.  The USAO rejected this proposal and informed defense

28  counsel that the USAO would provide safe passage for defendant to

1  return to the United States to face the charges in the

2  indictment.  Id. at ¶ 36; see also email dated April 21, 2009

3  from Gregory Nicolaysen to Brian Michael, attached to the Michael

4  Decl. as Exhibit 3.  The USAO explicitly informed defense

5  counsel: "Should your client refuse this opportunity, then the

6  govt will consider your client a fugitive and take whatever

7  lawful steps we deem appropriate." Id. at ¶ 36; Exhibit 3.

8  Defense counsel did not accept this proposal.  Id. at ¶ 37.  On

9  December 4, 2009, defendant filed the instant motion to dismiss.

10  Id.

11  The Applicable Speedy Trial Stipulations and Orders

12      On April 8, 2009, the government filed, on behalf of the

13  parties, a speedy trial stipulation seeking a continuance of the

14  May 5, 2009 trial date (CR 312).  Id. at ¶ 38.  On April 16,

15  2009, the Court entered an order continuing the trial date for

16  all defendants from May 5, 2009 to February 2, 2010 (CR 323).

17  Id. at ¶ 39.  On January 12, 2010, the government filed, on

18  behalf of the parties, a speedy trial stipulation seeking a

19  continuance of the February 2, 2010 trial date (CR 658).  Id. at

20  ¶ 40.  On January 14, 2010, the Court entered an order continuing

21  the trial date for all defendants from February 2, 2010 to

22  October 5, 2010 (CR 663).  Id. at ¶ 41.

23      In both the April 8, 2009 and January 12, 2010 stipulations

24  to continue the trial date, the parties cited the complexity of

25  the case, the voluminous discovery in the case, which includes a

26  large number of recordings (the great majority of which are in

27  the Spanish language) and thousands of pages of documentary

28  evidence, time needed by the defense to "conduct necessary

8

investigation, evaluate any defenses, confer with government counsel, advise defendants, make informed judgments with regard to motion practice and file motions, if any, seek pre-trial resolution of the defendants' cases, if appropriate, and, if necessary, prepare for trial" as among the reasons for the request to continue the trial date and for exclusion of time under the Speedy Trial Act. Id. at ¶ 42. In addition, in both the April 8 and January 12 stipulations to continue the trial date, the parties agreed that the "ends of justice served by continuing the case as requested outweigh the interest of the public and defendants in a trial within the time period set forth in the Speedy Trial Act for the reasons set forth above, the time period from the filing of this Stipulation, up to and including [the new trial date], is excludable time as to the defendants within the meaning of the Speedy Trial Act." Id. at ¶ 43.

Defendant did not agree to either the April 8, 2009 or the January 12, 2010 stipulations to continue the trial date. Id. at ¶ 44. The April 8, 2009 stipulation provided that "[c]ounsel for defendant RIVERA is not a party to this stipulation because he was unable to communicate with his client due to his recent and unexpected deportation (which occurred without the knowledge or consent of government counsel)." Id. at ¶ 45. The January 12, 2010 stipulation noted that "counsel for defendant RIVERA, Gregory Nicolaysen, Esq., has not joined in this stipulation because counsel is unable to communicate with his client, who was deported while charges were pending without the consent or knowledge of either Mr. Nicolaysen or government counsel. Mr. Nicolaysen has filed a motion to dismiss the indictment and

1  understands that, should that motion be denied, the matter will
2  be continued to October 5, 2010 as to his client over his
3  objection."   Id. at ¶ 46.

4      In both its April 16, 2009 and January 14, 2010 orders
5  continuing the trial date, the Court found that "for good cause
6  shown and in the interests of justice, which outweigh the
7  interests of the parties and the public to a speedy trial, for
8  the reasons set forth in the stipulation," that the time period
9  from the filing of the stipulation up to and including the new
10  trial date, was "excludable time for all defendants within the
11  meaning of the Speedy Trial Act."   Id. at ¶ 47.

12                              III.

13                            ARGUMENT

14  A.   DEFENDANT'S SPEEDY TRIAL RIGHTS HAVE NOT BEEN VIOLATED

15      Defendant claims that the government violated his statutory
16  right to a speedy trial in failing to bring him to trial on May
17  5, 2009, and as such, the charges against him should be dismissed
18  with prejudice.

19      The Speedy Trial Act, Title 18, United States Code, Section
20  3161(c)(1), requires that all criminal trials "commence within
21  seventy days from the filing date (and making public) of the
22  information or indictment, or from the date the defendant has
23  appeared before a judicial officer of the court in which such
24  charge is pending, whichever date last occurs."   Thus, the Speedy
25  Trial Act provides that the "speedy trial clock starts running
26  after the indictment or arraignment (whichever comes last) of the
27  last defendant."   United States v. Daychild, 357 F.3d 1082, 1090
28  (9th Cir. 2004).

1   The Speedy Trial Act sets forth a number of periods of delay
2   that are to be excluded from the 70-day computation.  The list of
3   excludable periods includes "[a]ny period of delay resulting from
4   a continuance granted by any judge on his own motion or at the
5   request of the defendant or his counsel or at the request of an
6   attorney for the Government, if the judge granted such
7   continuance on the basis of his findings that the ends of justice
8   served by taking such action outweigh the best interest of the
9   public and the defendant in a speedy trial."  18 U.S.C.
10  § 3161(h)(7)(A).  Among the factors for the court to consider in
11  deciding whether to grant such an "ends-of-justice" continuance
12  is "[w]hether the case is so unusual or so complex, due to the
13  number of defendants, the nature of the prosecution, or the
14  existence of novel questions of fact or law, that it is
15  unreasonable to expect adequate preparation for pretrial
16  proceedings or for the trial itself within the time limits
17  established by [the Act]."  18 U.S.C. § 3161(h)(7)(B)(ii); see
18  also id. 3161(h)(7)(B)(iv)(continuance for non-complex case
19  warranted where failure to grant continuance would deny defendant
20  or Government continuity of counsel or would deny counsel for
21  defendant or Government reasonable time necessary for effective
22  preparation, taking into account the exercise of due diligence).
23  A district court's finding of an "ends-of-justice" exclusion is
24  reviewed on appeal only for clear error.  United States v. Butz,
25  982 F.2d 1378, 1381 (9th Cir. 1993).  The Speedy Trial Act
26  further provides for the exclusion, for purposes of calculating
27  the 70-day period, of "[a] reasonable period of delay when the
28  defendant is joined for trial with a codefendant as to whom the

11

1   time for trial has not run and no motion for severance has been
2   granted." 18 U.S.C. § 3161(h)(6).   It also provides for the
3   exclusion of time of "[a]ny period of delay resulting from the
4   absence or unavailability of the defendant or an essential
5   witness."  18 U.S.C. § 3161(h)(3)(A).  Under the Speedy Trial
6   Act, "a defendant or an essential witness shall be considered
7   absent when his whereabouts are unknown and, in addition, he is
8   attempting to avoid apprehension or prosecution or his
9   whereabouts cannot be determined by due diligence."  18 U.S.C. §
10  3161(h)(3)(B).

11       Pursuant to Section 3162(a)(2) of the Speedy Trial Act,
12  "[i]f a defendant is not brought to trial within the time limit
13  required by section 3161(c) as extended by section 3161(h), the
14  information or indictment shall be dismissed on motion of the
15  defendant," either with or without prejudice.  Under Section
16  3162(a)(2) of the Speedy Trial Act, the "defendant shall have the
17  burden of proof of supporting such motion..."  In other words,
18  the "defendant has the burden of proving that the delay meets the
19  criteria for dismissal."  United States v. Medina, 524 F.3d 974,
20  980 (9th Cir. 2008).  The government, however, "shall have the
21  burden of going forward with the evidence in connection with any
22  exclusion of time under subparagraph 3161(h)(3)" on a motion to
23  dismiss the indictment for failure to bring a defendant to trial
24  within the 70-day time limit.  18 U.S.C. § 3162(a)(2).

25       Defendant's claim that the government violated his statutory
26  right to a speedy trial lacks merit, not least because the speedy
27  trial clock has yet to begin running as to this defendant.  The
28  Second Superseding Indictment is the operative indictment in this

12

case and because defendant was not arraigned on that indictment,
which alleged two additional counts against him, the speedy trial
clock has not begun to run as to him.  <u>See</u> 18 U.S.C.
§ 3161(c)(1).  There can be no speedy trial violation because
there is at present no speedy trial clock running as to this
defendant on this indictment.  Defendant's claim that the speedy
trial clock has run is simply wrong and as such, his claim that
his speedy trial rights have been violated fails.

        Second, even if the Second Superseding Indictment was not
the operative indictment here, defendant's speedy trial rights
would not have been violated even as to the initial Indictment or
the First Superseding Indictment because the Court entered valid
orders as to defendant and all of his co-defendants continuing
the trial date in this case and finding excludable periods of
time.  In its orders dated April 16, 2009 and January 14, 2010,
the Court overruled defendant's objection to a continuance of the
trial date, and made findings of excludable time that the Court
determined applied equally to all defendants.  The Court's
finding that a continuance as to the other defendants in this
multi-defendant case apply to defendant is consistent with the
law in this and other circuits.  As the Ninth Circuit has noted,
"[e]very circuit to consider [the issue] has concluded that 'an
exclusion as to one defendant applies to all co-defendants.'"
<u>United States v. Butz</u>, 982 F.2d 1378, 1381 (9th Cir. 1993).  <u>See
also</u> <u>United States v. Daychild</u>, 357 F.3d 1082, 1091 (9th Cir.
2004)("any calculation affecting one defendant applies to the
other because neither defendant filed a motion for severance");
<u>United States v. Calabrese</u>, 825 F.2d 1342, 1347 (9th Cir.

                                13

1987)(six-month delay attributable to one defendant applied to
all co-defendants); <u>United States v. Van Brandy</u>, 762 F.2d 548,
551 (9th Cir. 1984)("[A]ny delay attributable to [a defendant] is
equally attributable to all co-defendants [under
§ 3161(h)(7)]."); <u>see also</u> <u>United States v. Edwards</u>, 627 F.2d
460, 461 (D.C. Cir. 1980)("The exclusion under 18 U.S.C. §
3161(h)(7) is crucial in a case involving multiple defendants
because it provides that an exclusion applicable to one defendant
applies to all codefendants.").

        In this case, defendant, who has never moved for a
severance, is joined with 38 co-defendants in a case that is
scheduled to proceed to trial on October 5, 2010 on a 31-count
Second Superseding Indictment charging offenses including RICO
conspiracy, narcotics conspiracy, kidnaping, and conspiracy to
commit money laundering.  The request for a continuance made by
the majority of defendant's co-defendants has in each instance
been supported by the complexity of the case, the number of
defendants charged in the case, and the amount of discovery
produced to date.  As defendant himself concedes, the "volume of
pretrial discovery is extremely large, as is the complexity of
the issues."  (Def. Br. at 16.)  Thus, the continuance and the
Court's findings of excludable time are warranted under Section
3161(h)(7)(A) as to all of the defendants.  The Court's findings
of excludable time are further warranted under Section
3161(h)(1)(D) as a delay resulting from any pretrial motions from
the filing of the motion through the conclusion of the hearing
on, or other prompt disposition of, such motion, under Section
3161(h)(3)(A) as a period of delay resulting from the absence of

14

1   the defendant, and under Section 3161(h)(6) as a reasonable
2   period of delay when the defendant is joined for trial with a
3   codefendant as to whom the time for trial has not run and no
4   motion for severance has been granted.

5       Defendant does not address the exclusions of time
6   attributable to pretrial motions.  Nor does he challenge the
7   reasonableness of the delay under Section 3161(7) as to his
8   codefendants.  Instead, he argues that the April 8, 2009
9   stipulation, the April 16, 2009 order, the January 12, 2010
10  stipulation, and the January 14, 2010 order continuing the trial
11  date are "deficient" because they fail "to demonstrate facts
12  sufficient to meet the government's burden of proving that
13  [defendant] has been absent or unavailable within the meaning of
14  section 3161(h)(3)."  (Def. Br. at 13.)  But the government's
15  burden to prove a defendant is "absent or unavailable" within the
16  meaning of Section 3161(h)(3) is, under the plain language of the
17  statute, triggered only where the defendant has moved to dismiss
18  an action on speedy trial grounds.  The government does not bear
19  the burden to prove in an evidentiary hearing or otherwise that a
20  defendant is "absent or unavailable" each time the parties seek
21  to continue the trial date.  Nor is it clear what purpose such a
22  hearing would serve where, as here, defendant's absence is not in
23  dispute.  For this reason, defendant's request in the alternative
24  for an evidentiary hearing that would establish that defendant is
25  in fact "absent," should be denied.

26      The Court appropriately overruled defendant's objections to
27  the April 8, 2009 and January 12, 2010 stipulations to continue
28  the trial date.  On each occasion, the Court had valid reasons

1  for granting the continuance and finding exclusions of time.  See

2  e.g., Butz, 982 F.2d 1378, 1381 (9th Cir. 1993)("The severity and

3  complexity of the charges indicated that counsel would need extra

4  time to conduct discovery, file pretrial motions and to prepare

5  defenses to the charges.  The conspiracy covered six states and

6  involved nine defendants charged in a 29-count indictment.  The

7  wiretap evidence consisted of hundreds of hours of tape time.

8  Discovery was voluminous."); United States v. Fogarty, 692 F.2d

9  542, 546 (8th Cir. 1982)(ends-of-justice continuance warranted

10  for complex case with seven defendants and 45 alleged overt acts,

11  and excludable time properly applied to defendant notwithstanding

12  his failure to join in the continuance motion).  Therefore, even

13  if this case were governed by the speedy trial clocks that had

14  begun to run with respect to the non-operative indictments in

15  this case, defendant's objection to the continuance of the trial

16  date was appropriately overruled by this Court, which found that

17  the exclusions of time apply to all defendants.

18  B.   IF THE COURT DETERMINES TO DISMISS THIS ACTION AGAINST

19       RIVERA, IT SHOULD DO SO WITHOUT PREJUDICE

20       Defendant argues that all of the charges against defendant,

21  whether in the operative Second Superseding Indictment, or the

22  two prior non-operative indictments, should be dismissed with

23  prejudice.  (Def. Br. at 15-18.)  As discussed above, the

24  government has not violated defendant's right to a speedy trial,

25  and as such, dismissal of the charges is not warranted.  If,

26  however, the Court were to consider dismissing this action

27  against defendant, the government respectfully submits that a

28  dismissal should be without prejudice.

1     The Speedy Trial Act provides that in "determining whether

2 to dismiss the case with or without prejudice, the court shall

3 consider, among others, each of the following factors: the

4 seriousness of the offense; the facts and circumstances of the

5 case which led to the dismissal; and the impact of a

6 reprosecution on the administration of this chapter and on the

7 administration of justice." 18 U.S.C. § 3161(a)(2).   Each of

8 these three factors weighs in favor of a dismissal without

9 prejudice here.

10 1.   <u>Seriousness of the Offense</u>

11     Defendant is charged with RICO conspiracy, narcotics

12 conspiracy, and conspiracy to commit money laundering, all of

13 which concern defendants' long-term work as a narcotics dealer,

14 "rent" collector, and enforcer on behalf of the CLCS

15 Organization.   As described in detail above, defendant admitted

16 to this criminal conduct in a post-arrest <u>Mirandized</u> statement.

17 The criminal conduct with which defendant has been charged, to

18 which he has admitted, is unquestionably serious.

19     Defendant concedes that the Second Superseding Indictment

20 "contains highly serious RICO and drug conspiracy charges."

21 (Def. Br. at 16.)   He nevertheless claims that "the factor of

22 seriousness of the offense weighs in favor of dismissing the case

23 with prejudice" because if "the government were to apprehend

24 Rivera a month before the new trial date," "it would be

25 impossible for defense counsel to begin to get up to speed and

26 . . . acquire the necessary level of knowledge regarding the

27 evidence and legal issues so as to render effective assistance of

28 counsel in either trial or plea negotiations."   <u>Id.</u> at 17.

1  Defense counsel fails to cite any authority in support of the
2  unique proposition that in analyzing the "seriousness of the
3  offense" to determine whether dismissal on speedy trial grounds
4  should be with or without prejudice, the court should consider
5  whether defense counsel will have adequate time to prepare if and
6  when his fugitive client is brought to court to face the charges.
7  Even if this were a relevant factor for consideration, it would
8  militate in favor of dismissal without prejudice.  After all, in
9  the event that defendant is brought to the United States to face
10 charges, he would at least have seventy days under the Speedy
11 Trial Act to prepare his defense.  Nor is defendant's claim that
12 his "counsel has been put in the position by the government of
13 having to step back from this litigation while the case as to
14 Rivera remains in hiatus" correct.  (Def. Br. at 16.)  As is
15 evidenced by defendant's present motion, he has not "step[ped]
16 back from this litigation."

17 2.   The Facts and Circumstances of the Case Which Led to the
18      Dismissal

19      The BOP, an agency of the federal government, erroneously
20 released defendant in February 2009, even though the USAO and the
21 FBI had requested that defendant be detained pending the
22 adjudication of Pantoja Case.  At the time of his release,
23 however, defendant was aware of the charges then pending against
24 him, and had counsel appointed to represent him on those charges,
25 with whom defendant could consult even after his release.
26 Furthermore, the evidence strongly suggests that defendant was in
27 fact in contact with defense counsel after his release.  As noted
28 above, defense counsel proposed to arrange to put his client, at

18

1   his client's family's expense, on a flight from El Salvador to
2   the United States, to plead guilty, as long as the government
3   would agree to a sentence of time-served.  Defense counsel
4   presumably would not have proposed this solution to the
5   government, if he was not in a position to direct his client to
6   return to the United States.  The government rejected this "time-
7   served" proposal, but offered to arrange for defendant's safe
8   passage to the United States.  Furthermore, the government
9   explicitly informed defense counsel that his client would be
10  deemed a fugitive and treated as such if he did not return to the
11  United States to face the charges.  The government's offer of a
12  safe passage return to the United States was not accepted, and as
13  such, the government has since treated defendant as a fugitive,
14  someone "whose location is unknown, or who is successfully
15  resisting government efforts to bring him into the jurisdiction."
16  United States v. Sandoval, 990 F.2d 481, 484 (9th Cir. 1993).
17  See also United States v. Blanco, 861 F.2d 773, 779 (2d Cir.
18  1988)("A person can be said to be a fugitive when, while abroad,
19  they learn that they are under indictment and make no effort to
20  return to the United States to face charges.").
21      A fugitive, such as defendant, who is aware of the charges
22  pending against him, should not be able to obtain dismissal of an
23  indictment.  Although an error on the part of the BOP resulted in
24  defendant's release, through no fault of the USAO or the FBI,
25  defendant alone is accountable for the fact that he has failed to
26  return to the United States.  This Circuit has repeatedly held
27  that a fugitive who is aware of the charges pending against him
28  and fails to surrender and face those charges cannot obtain

1  dismissal of an action on the basis that his speedy trial rights
2  have been violated.  See e.g., United States v. Sperow, 494 F.3d
3  1223, 1226-1227 (9th Cir. 2007)(denying Sixth Amendment speedy
4  trial claim where the defendant evaded authorities and thereby
5  caused the post-indictment delay); Sandoval, 990 F.2d at 484-485
6  (noting that a fugitive will not be able to obtain a dismissal on
7  the basis that his Sixth Amendment speedy trial right was
8  violated).[1]  Defendant, who is now properly deemed a fugitive of
9  justice, should not obtain a windfall on account of an
10 administrative error on the part of the BOP.

11      Here, of course, irrespective of defendant's current status,
12 defendant cannot even claim that his speedy trial rights were
13 violated, as the speedy trial clock has not begun to run against
14 him, much less obtain dismissal of this action on that basis.

15 3.  The Impact of a Reprosecution on the Administration of the
16     Speedy Trial Act and on the Administration of Justice

17      The Speedy Trial Act and the administration of justice would
18 be ill-served by dismissal of this action with prejudice where

19 _____

20      [1] Defendant cites United States v. Yida, 498 F.3d 945, 958
   (9th Cir. 2007) for the proposition that the "government has only
21 itself to blame in causing the facts and circumstances that would
   lead to a dismissal on speedy trial grounds."  Yida, however, is
22 inapposite.  Yida concerns the definition of unavailability under
   Federal Rule of Evidence 804(a)(5), which provides that a
23 declarant is unavailable if he "is absent from the hearing and
   the proponent of a statement has been unable to procure the
24 declarant's attendance . . . by process or other reasonable
   means."  Here, as defense counsel points out, the "terms 'absent'
25 or 'unavailable' both have legal definitions and consequences
   within the Speedy Trial Act . . . and are not to be construed in
26 the generic parlance of everyday language."  (Def. Br. at 14.)
   Yida therefore is not instructive in assisting this court in
27 determining the meaning of "absent" or "unavailable," terms that
   are already defined under the Speedy Trial Act.
28

20

1  there is no evidence of bad faith on the part of the government
2  and where defendant, who is not in custody, would not suffer
3  prejudice as a result of any delay in bringing him to trial.  <u>See</u>
4  <u>Medina</u>, 524 F.3d 987-988.
5      Defendant does not address the impact of a reprosecution on
6  the administration of the Speedy Trial Act or on the
7  administration of justice.  In discussing "Other Factors,"
8  however, defendant claims that he would be prejudiced if the
9  Court dismissed the case without prejudice, and the government
10  reprosecuted defendant because "then Rivera would be in a
11  situation where he would be essentially inheriting pretrial and
12  trial-related rulings that had already been litigated by other
13  counsel for co-defendants, and which have bearing on the case
14  against Rivera."  (Def. Br. at 18.)  First, there is no
15  indication that upon reprosecution, defendant would be joined for
16  trial with his co-defendants.  But even if defendant were joined
17  for trial with his co-defendants when he is brought to the United
18  States to face charges, he would be in a position no different
19  than any other fugitive who is apprehended prior to the trial and
20  joined with his codefendants.  Under these circumstances, the
21  speedy trial clock would recommence upon defendant's arraignment
22  on the Second Superseding Indictment.  That is because the
23  "speedy trial clock starts running after the indictment or
24  arraignment (whichever comes last) of the *last defendant*."
25  <u>Daychild</u>, 357 F.3d at 1090 (emphasis added).  Defendant's capture
26  and subsequent arraignment on the charges in the Second
27  Superseding Indictment would therefore restart the Speedy Trial
28  clock as to all defendants.  Defendant would have ample time to

1  prepare for trial and the opportunity to seek reconsideration of

2  any pretrial findings with which he disagrees that bear on his

3  case.  Defendant, therefore, would not be prejudiced by dismissal

4  of this action without prejudice.

5         Consideration of these three statutory factors - the

6  seriousness of the offense, the facts and circumstances that led

7  to the dismissal, and the impact of a reprosecution on the

8  administration of the Speedy Trial Act and justice - militates in

9  favor of a dismissal without prejudice if the Court determines

10 that defendant's statutory right to a speedy trial has in fact

11 been violated.

12                              III.

13                           <u>CONCLUSION</u>

14        For all the foregoing reasons, defendant Alexander Rivera's

15 motion to dismiss or, in the alternative, for an order to show

16 cause should be denied.

17 Dated: February 8, 2010          GEORGE S. CARDONA
                                    Acting United States Attorney
18
                                    CHRISTINE C. EWELL
19                                  Assistant U.S. Attorney
                                    Chief, Criminal Division
20

21

                                    KEVIN M. LALLY
22                                  BRIAN R. MICHAEL
                                    NILI T. MOGHADDAM
23                                  Assistant United States Attorneys

24                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA
25

26

27

28

                                22